STATE OF CONNECTICUT *v.* LOUIS REED

KING, C. J., ALCORN, HOUSE, THIM and RYAN, Js.

Argued November 7, 1968—decided January 28, 1969

*Herbert J. Bundock,* public defender, for the appellant (defendant).

*Donald A. Browne,* assistant state's attorney, with whom, on the brief, was *Otto J. Saur,* state's attorney, for the appellee (state).

RYAN, J.  In an information filed by the state's attorney, the defendant was charged with the crime of robbery with violence while being so armed as clearly to indicate violent intent in violation of § 53-14 of the General Statutes.[1]  In a trial to the jury, the defendant was found guilty.  Upon the denial of the defendant's motion to set aside the verdict, the defendant has appealed from the judgment rendered.

From the evidence the jury could have found the following facts:  Felix E. Puebla operated a grocery store on Stratford Avenue in the city of Bridgeport.  On October 1, 1966, the defendant came into the store about 4 p.m. and approached Puebla at the store counter.  He pointed a gun at Puebla, told him it was a holdup, ordered him to lie down on the floor and then pushed him down.  The defendant, after an unsuccessful attempt to open the cash register, ordered Puebla to get up and open it.  Puebla did as he was instructed, after which the defendant removed more than $95 from the register and again ordered Puebla to lie down on the floor.  The defendant then backed out of the store, pointing a gun at the victim after telling him that if he moved he would be shot.  The defendant first walked, and then ran, to a red Mustang car parked around the corner and was driven away by another person who was waiting there for him.

The defendant, in his first assignment of error,

---

[1] "Sec. 53-14.  MAIMING WITH INTENT TO DISFIGURE.  ROBBERY WITH VIOLENCE; ARMED ROBBERY.  Any person who puts out an eye, slits a nose, ear, lip or any other part of the head, face or neck of another, or cuts or bites off or disables any member of another, with intent to maim or disfigure him, or who commits robbery, and in perpetration thereof uses any personal abuse, force or violence, or is so armed as clearly to indicate violent intent, shall be imprisoned not more than twenty-five years."

claims that the trial court should have set aside the verdict because of the failure of the state to prove that the defendant was "so armed as clearly to indicate violent intent." The defendant, in his brief, concedes that the presence of the gun admittedly indicated violent intent, but he claims that it did not "clearly" indicate violent intent because the victim did not know whether the gun was loaded and there was no evidence that Puebla saw a bullet in the gun or that the gun was discharged. The defendant also urges that there is nothing in the evidence to indicate that the gun was loaded.

"Robbery is defined in the common law as the felonious taking of personal property from the person or custody of another by force or intimidation. *State* v. *DiBattista,* 110 Conn. 549, 558, 148 A. 664; *State* v. *Butler,* 27 N.J. 560, 589, 143 A.2d 530; *State* v. *Reposa,* 99 R.I. 147, 149, 206 A.2d 213." *State* v. *Reid,* 154 Conn. 37, 39, 221 A.2d 258. The penalty for common-law robbery is imprisonment for not more than seven years. General Statutes § 53-67. The effect of § 53-14 is to increase the penalty to a maximum imprisonment of twenty-five years where the perpetrator of the robbery either uses personal force or violence or "is so armed as clearly to indicate a violent intent."

Prior to 1796 and to the present time, Connecticut statutes have distinguished between common-law robbery and robbery with violence. In the Revision of 1796 it was provided that, "if any Person shall commit Burglary or Robbery; if in the Perpetration of said Crimes, the Person committing the same, shall be guilty of any personal abuse, Force or Violence, or shall be so armed with any dangerous Armour or Weapon, as clearly to indicate violent Intentions", he shall be imprisoned. Statutes, 1796,

p. 184 § 2. In the Revision of 1866, the pertinent portion of the statute contained identical language. Rev. 1866, p. 248 § 18. In the Revision of 1875, statutes relating to maiming with intent to disfigure and to carnal abuse of a female child were combined with the statute concerning robbery or burglary with violence. The pertinent portion of the statute with which we are concerned in the instant case provided in 1875 that any person "who shall commit robbery . . . and shall, in the perpetration thereof, use any personal abuse, force, or violence, or be so armed as clearly to indicate violent intentions" shall be imprisoned. Rev. 1875, p. 499 § 7. The words "with any dangerous Armour or Weapon" were deleted although there had been no intervening action by the General Assembly.[2] "It is presumed that changes in the language of a statute when it is incorporated into a revision are not intended to alter its meaning and effect, and this is particularly true of the Revision of 1875. *Bassett* v. *City Bank & Trust Co.*, 115 Conn. 393, 401, 161 A. 852; *State* v. *Muolo*, 118 Conn. 373, 384, 172 A. 875." *Castagnola* v. *Fatool*, 136 Conn. 462, 468, 72 A.2d 479. The revisers' preface to the Revision of 1875 says (p. xii) : "We . . . have carefully gone over every section of our existing laws, striking out all unnecessary verbiage and repetitions, and condensing every expression which we thought susceptible of it." It follows that the deletion of these words by the revisers was not intended to alter the meaning and effect of the statute. The phrase "so armed as clearly to indicate violent intentions" continued to mean "so armed with any dangerous Armour or Weapon, as clearly

---

[2] The word "armour" as used in the 1796 statute is now obsolete, but in 1866 it was synonymous with "weapon." Webster, New International Dictionary (2d Ed.).

to indicate violent Intentions." There has been no essential change in the language of the pertinent portion of this statute from 1875 to the present time.

We must determine whether there was evidence from which the jury could have found that the defendant was so armed with a dangerous weapon as clearly to indicate a violent intent. An unloaded gun or pistol generally is recognized as a dangerous weapon within the meaning of the statutes concerning the crimes of robbery, or assault with intent to rob, while armed with a dangerous weapon. 2 Wharton, Criminal Law and Procedure § 546, p. 245. When the weapon involved is a gun, the prosecution need not produce it, nor is the prosecution required to prove that the gun was loaded. *People* v. *Aranda,* 63 Cal. 2d 518, 532, 407 P.2d 265. The majority rule in jurisdictions having statutes which increase the penalty for robbery committed with a deadly or dangerous weapon is in accord with this conclusion, whether the gun used in the robbery is unloaded; *Commonwealth* v. *Nickologines,* 322 Mass. 274, 277, 76 N.E.2d 649; *People* v. *Ash,* 88 Cal. App. 2d 819, 830, 199 P.2d 711; note, 79 A.L.R.2d 1412, 1426 and Later Case Service p. 81; or is a toy. *People ex rel. Griffin* v. *Hunt,* 267 N.Y. 597, 196 N.E. 598; note, 61 A.L.R.2d 996, 1001 and Later Case Service p. 431; see *Jackson* v. *State,* 231 Md. 591, 594, 191 A.2d 432; *Hayes* v. *State,* 211 Md. 111, 116, 126 A.2d 576; *State* v. *Young,* 134 W. Va. 771, 781, 61 S.E.2d 734. Section 53-14 of the General Statutes prescribes the penalty for a robbery by one so armed with a dangerous weapon as clearly to indicate violent intent. It does not limit itself to a robbery with a loaded gun. "Intent is a question of fact, the determination of which should stand unless the conclusion drawn by the trier is an unreasonable one. *Walter* v. *Home*

*National Bank & Trust Co.,* 148 Conn. 635, 638, 173 A.2d 503; *State* v. *Nathan,* 138 Conn. 485, 488, 86 A.2d 322. A person's intention may be inferred from his conduct." *State* v. *Smith,* 157 Conn. 351, 354, 254 A.2d 447; *State* v. *Pallanck,* 146 Conn. 527, 531, 152 A.2d 633; *Kiernan* v. *Borst,* 144 Conn. 1, 6, 126 A.2d 569. We conclude that there was ample evidence for the jury to find that the defendant was so armed with a dangerous weapon as clearly to indicate violent intent.

The defendant assigns error in the refusal of the trial court to instruct the jury to disregard a comment made by counsel for the state in final argument. Upon conclusion of the arguments, the defendant objected to a statement made by the assistant state's attorney in which reference was made to the cross-examination by defense counsel of Cicero E. Davis, Jr., a witness for the state, as "deterring people from coming into" the courtroom as witnesses. Exception was duly taken by the defendant. The finding indicates that on cross-examination Davis was asked three times whether he was angry at the defendant, four times whether he ever had any arguments with the defendant, twice whether he owed the defendant any money, twice whether he accepted numbers bets from the defendant and five times whether he refused to pay off a bet to the defendant. The witness answered in the negative to each of these questions. Certainly, it may be said that the trial court did not restrict or impede the defendant in his cross-examination of this witness. "The trial court is invested with a large discretion with regard to arguments of counsel, and we should interfere only where that discretion was clearly exceeded or abused to the manifest injury of some party. *Cascella* v. *Jay James Camera Shop, Inc.,*

147 Conn. 337, 343, 160 A.2d 899; *James* v. *Bowen,* 83 Conn. 702, 706, 78 A. 420." *Bryar* v. *Wilson,* 152 Conn. 162, 165, 204 A.2d 831; *Intelisano* v. *Greenwell,* 155 Conn. 436, 442, 232 A.2d 490. The trial court concluded that under the circumstances there was nothing contained in the remark of counsel which was unfair or prejudicial to the defendant, and it did not abuse its discretion in so ruling.

There is no error.

In this opinion the other judges concurred.