UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:  Judges Frank, Huff and Senior Judge Coleman
Argued by teleconference


DAVID JOBB EDWARD

MEMORANDUM OPINION[*] BY
v.     Record No. 1768-12-2     JUDGE ROBERT P. FRANK
NOVEMBER 19, 2013

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF KING GEORGE COUNTY
J. Martin Bass, Judge

Vanessa R. Jordan, Assistant Public Defender (Office of the Public
Defender, on brief), for appellant.

Victoria Johnson, Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.


David Jobb Edward, appellant, was convicted, in a bench trial, of misdemeanor assault and

battery in violation of Code § 18.2-57.  On appeal, he argues the trial court erred in refusing to allow

the testimony of a defense witness who, he contends, would further impeach the victim's testimony.

For the reasons stated, we affirm.

BACKGROUND

Appellant and S.C. had been involved in a romantic relationship that ended in January of

2013.  S.C., accompanied by her brother-in-law, Mr. Hyles, and her son, sought to retrieve her

belongings from appellant's residence.

At trial, Hyles testified that once they arrived at appellant's home, appellant "opened the

screen door and invited [Hyles] into the house."  Once Hyles began to walk inside, appellant pushed

Hyles to the floor and Hyles fell backwards onto the porch.  When Hyles stood, appellant punched

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

him, breaking his nose. Appellant continued to beat Hyles on the back of his head with his fists. Finally, S.C.'s son pulled the two men apart. Hyles was transported to the hospital by ambulance for treatment.

During cross-examination, Hyles denied he had been previously told by appellant to stay off appellant's property and denied that he was told that evening to leave the premises. He also denied that he threw the first punch, that he grabbed and squeezed appellant's testicles, that he bit appellant's finger and ear during the altercation, and further denied that he earlier told a mutual acquaintance that he was going to "whoop" appellant the next time he saw him. Hyles did acknowledge that he is a previously convicted felon.

The court read into evidence a stipulation of S.C.'s testimony. In relevant part, she indicated that she did not see how the fight started, but she did see Hyles grab appellant's testicles.

Appellant testified that he was not expecting to see Hyles on the day S.C. collected her belongings. He did not invite him into his home; rather, he told him expressly to get off his property. According to appellant, when Hyles rang the doorbell, Hyles jumped on appellant's back and grabbed his testicles. The fight continued into the kitchen, where, appellant testified, he continued to defend himself against Hyles. As a result of the fight, appellant sustained injuries to his lip, finger, and ear. Appellant introduced photographs taken by Deputy Shriver that evening depicting his injuries. Appellant testified that he had told Hyles three times to stay off his property.

William Lamb testified that he knows both Hyles and appellant. In December of 2011 he had a conversation with Hyles wherein Hyles threatened to "kick [appellant's] ass."

Appellant called Mary Stevens as a witness in an attempt to impeach Hyles' testimony that Hyles was never told to stay off appellant's property. Ms. Stevens would have testified that

she was "present for an occasion where [appellant] told [Hyles] to stay off" of appellant's property, although she did not reference a time frame when this conversation would have occurred. The Commonwealth objected to relevancy when counsel asked Stevens if she was present "for an occasion where [appellant] told [Hyles] to stay off his property." The court sustained the objection, reasoning that because appellant already denied having any conversation in Stevens' yard, the question to Stevens bore no relevance to Hyles' credibility.[1]

In rebuttal, the Commonwealth called Deputy Shriver. He told the court that after he responded to appellant's residence, appellant told him that he initially instructed Hyles to leave his property, but then invited him inside. Appellant told Shriver that upon entering the residence, Hyles struck appellant in the face and the fight ensued. Shriver noticed cuts on appellant's fingers and face.

At the conclusion of the evidence and arguments, the trial court stated that it considered all of the evidence, including the credibility and demeanor of the witnesses. The court found appellant guilty of misdemeanor assault and battery.

This appeal follows.

ANALYSIS

Appellant argues that the trial court erred by refusing to allow the testimony of Ms. Stevens, which would have further impeached Hyles by contradicting his testimony that

---

[1] We note that the trial court misinterpreted Ms. Stevens' testimony to say that the conversation took place in her backyard. Ms. Stevens was asked if she had ever been present for an occasion where appellant told Hyles to stay off of his property. Appellant denied he ever told Hyles, while in Stevens' yard, to stay away from his property. He never indicated the location of the conversation.

appellant never banned him from the property. The Commonwealth responds that error, if any, was harmless.[2]

"'The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion.'" Bell v. Commonwealth, 49 Va. App. 570, 576, 643 S.E.2d 497, 500 (2007) (quoting Blain v. Commonwealth, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988)). "This standard, if nothing else, means that the trial judge's ruling will not be reversed simply because an appellate court disagrees. Only when reasonable jurists could not differ [does this Court] say an abuse of discretion has occurred." Thomas v. Commonwealth, 44 Va. App. 741, 753, 607 S.E.2d 738, 743, adopted upon reh'g en banc, 45 Va. App. 811, 613 S.E.2d 870 (2005). "The proponent of the evidence bears the burden of establishing, by a preponderance of the evidence, the facts necessary to support its admissibility." Id.

"When a witness takes the stand, she puts her credibility at issue in the case." McCarter v. Commonwealth, 38 Va. App. 502, 506, 566 S.E.2d 868, 869 (2002). "[T]the opposing party may impeach [a] witness by 'drawing into question the accuracy of the witness's perception,

---

[2] The Commonwealth initially asserts on brief that this issue is waived pursuant to Rule 5A:18. We disagree. Rule 5A:18 is clear that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling . . . ." Indeed, "[i]n order to preserve an issue for appeal, 'an objection must be timely made and the grounds stated with specificity.'" McDuffie v. Commonwealth, 49 Va. App. 170, 177, 638 S.E.2d 139, 142 (2006) (quoting Marlowe v. Commonwealth, 2 Va. App. 619, 621, 347 S.E.2d 167, 168 (1986)). If a party fails to timely and specifically object, he waives his argument on appeal. Arrington v. Commonwealth, 53 Va. App. 635, 642, 674 S.E.2d 554, 557 (2009). Here, after the Commonwealth objected to the proposed question to Stevens and the court ruled, appellant responded that "it is direct impeachment" testimony. We believe this response sufficiently put the trial court and opposing counsel on notice of appellant's objection. Andrews v. Commonwealth, 37 Va. App. 479, 493, 559 S.E.2d 401, 408 (2002).

The Commonwealth further asserts on brief that appellant abandoned his argument regarding impeachment of Hyles because at trial counsel stated that he offered Stevens' testimony as impeachment of appellant. In the context of the entire exchange between counsel and the trial court, we find that counsel misspoke and it is clear that Stevens' testimony was offered for the impeachment of the victim alone.

recordation, recollection, narration, or sincerity.'" Pearce v. Commonwealth, 53 Va. App. 113, 120, 669 S.E.2d 384, 388 (2008) (quoting McCarter, 38 Va. App. at 506, 566 S.E.2d at 869-70). Any evidence which would tend to convince the fact finder that the witness' perception, memory, or narration is defective is relevant for purposes of impeachment. Id. "The sole purpose of impeachment evidence is to persuade the [fact finder] that the witness is not worthy of belief . . . ." Charles E. Friend, The Law of Evidence in Virginia § 12-1 (7th ed. 2012).

The Commonwealth maintains that any error in excluding Ms. Stevens' testimony was harmless in this case. Assuming without deciding there was error, we agree that excluding Stevens' testimony was harmless.

A criminal conviction shall not be reversed for an error committed at trial when "it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached." Code § 8.01-678; Hanson v. Commonwealth, 14 Va. App. 173, 189, 416 S.E.2d 14, 24 (1992).

> A reviewing court must take into account the burden of proof applied at trial when evaluating the impact of an error upon a verdict. To the extent that the impact of an error on a verdict is affected by the burden of proof, in a criminal case, the reviewing court must consider that the fact finder was required to reach its verdict beyond a reasonable doubt.

Lavinder v. Commonwealth, 12 Va. App. 1003, 1006, 407 S.E.2d 910, 911 (1991) (en banc). "The effect of an error on a verdict varies widely depending upon the circumstances of the case. Each case must, therefore, be analyzed individually to determine if an error has affected the verdict." Id. at 1009, 407 S.E.2d at 913 (internal citations and quotations omitted).

The victim, Hyles, had already been impeached on a number of issues. He denied that he was the aggressor in the fight, a fact that appellant contradicted. Hyles denied grabbing appellant's testicles, a fact that S.C. disputed in her stipulation. Hyles stated he never threatened to "whoop" appellant, yet Mr. Lamb testified that he heard Hyles threaten to "kick [appellant's] ass."

- 5 -

Additionally, Hyles testified he never bit appellant on the ear or finger. Yet, Deputy Shriver observed and photographed injuries on appellant consistent with appellant's testimony of how Hyles inflicted those wounds. Appellant also contradicted Hyles' testimony that he was never told to stay away from appellant's property. Finally, Hyles is a convicted felon. See Code § 19.2-269 ("A person convicted of a felony or perjury shall not be incompetent to testify, but the fact of conviction may be shown in evidence to affect his credit.").

The issue before the trial court was whether appellant or Hyles was the primary aggressor. Appellant attempted to impeach Hyles' credibility by offering Stevens' testimony. Hyles' credibility had already been challenged by other impeachment testimony. The trial court, in a bench trial, weighed the credibility of the witnesses and appellant and found appellant guilty of assault and battery. The trial court had before it testimony and evidence that impeached Hyles but nevertheless found him credible, rejecting appellant's testimony. The value of Ms. Stevens' excluded impeachment testimony was minimal at best, particularly in light of appellant's statement to Deputy Shriver that appellant told Hyles to get off his property and then invited him in. Appellant's statement to the deputy supported Hyles' testimony that he was invited into appellant's house prior to the fight. Thus, the fact that appellant told Hyles to leave at some unknown time is irrelevant.

Thus, we can say, beyond a reasonable doubt and without usurping the fact finding function, that the verdict would have been the same had Ms. Stevens been allowed to testify. We also conclude that an additional piece of impeachment testimony would not have altered the outcome of the trial.

Accordingly, we find the error, if any, to be harmless.

Affirmed.